WRIGHT, J.
charged the jury as follows: Gentlemen of the jury, You have in charge Ira West Gardiner, accused by the state with having murdered Maria Gardiner, otherwise called Maria Buel, by stabbing her with a knife, on the 8th of August, 1832. This accusation you have, on your oaths, undertaken well and truly to try, and to find a verdict according to your evidence. The patient attention you have given to the investigation and arguments of counsel, satisfy us that you are rightly impressed with your duty, and need no further caution from us, on that head. You have only to look to the accusation, and the evidence given you in court; with the rumors and excitement out of doors, alluded to by counsel, j'ou have nothing to do.
1. You will first inquire upon the evidence, whether Maria Gar-diner, alias Maria Buel, is dead? If that fact is not proven, you need examine no further, but should instantly acquit. If you are satisfied of her death, it will be your duty to inquire farther. It is urged, as to this part of the case, that the proof essentially varies *from the indictment, in this, that in the indictment, the [399 •deceased is described as Maria Gardiner, alias Maria Buel; whereas, the proof is, that she was called Maria Gardiner, and that her real name was Maria Frances Buel. If the proof satisfies you that the •deceased was generally known by the name of Maria Gardiner, or Maria Buel, the description in the indictment is sufficient. The •object being to identify with certainty the person slain, any description which attains to that end, satisfies the law. If one has acquired a particular name, by reputation, it is sufficient to describe him by that name, in legal proceedings.
2. Your next inquiry will be, did the prisoner kill the deceased by stabbing her? The evidence must satisfy you that she was stabbed in the body by the prisoner, and that the stabbing caused her death. If this is proven to your satisfaction, you will then inquire—
3. Was the prisoner of sound mind when he perpetrated the act ? A person without the light of reason, is not the subject of punishment. The established principle is, “that it is the reason of man that makes him accountable for his actions; and that the deprivation of reason acquits him of crime.” The prisoner claims to have provento you, that when this act was done, he. was not of sane mind. He claims, that his head was hurt by a fall, some years ago, from which a derangement of the brain ensued, and occasional *408 alienation of mind up to this time, and that he was under the influence of this alienation of mind when the deed complained of was committed. Examine all the circumstances carefully, and if you; think him then insane, acquit him. The distinction drawn by Lord Erskine in Hadfield’s case, and relied upon by counsel, which requires a greater degree of insanity to excuse from accountability for crime, than to exonerate from the obligation of civil contracts, does not obtain in this state, and is not here recognized as law.
If you find Maria Gardiner dead, that her death resulted from stabs inflicted uj>on her body by the prisoner, with a sharp instrument, and that he was of sane mind when he inflicted the wounds, then you will inquire—
4. If the act was done purposely, of deliberate and premeditated malice? The proof must satisfy you that the prisoner, when he struck the blows, designed or intended to kill, and that he did the deed with deliberate and premeditated malice. The design or picrpose to kill, may be deduced from the attending circumstances: the manner of inflicting the wounds; the kind of instrument with which they were inflicted, and its natural tendency to destroy life. It may 400] *be deduced also from the declarations of the prisoner, made at the time, or before, or after the deed was done; but where reliance is placed on declarations, a jury should receive them with great caution, and scrutinize with care the circumstances under which they were uttered. Declarations made while a prisoner is agitated or depressed, are to be regarded but slightly. They are often made-without thought or intention; are heard imperfectly, inaccurately remembered, and carelessly detailed. There is danger that the witness may substitute words of bis own for those of the prisoner, and by the employment of his own language, in whole or m part, convey to the mind of the hearer ideas the prisoner never thought of. If, however, the act itself was one palpably calculated to destroy life, the law and the common sense of mankind concur m holding that the perpetrator intended to produce that end.
If the act was purposely done, it will be for you further to inquire, whether it was done with deliberate and premeditated malice?' Malice, in its legal sense, is not confined to a particular animosity against the individual killed. If the prisoner, in the act Complained of, was influenced by a general evil design, a wicked and corrupt motive, under circumstances that show his heart desperately wicked,, the act is adjudged to be with malice prepense, or with deliberate and premeditated malice. In general, every taking away of the life of another, is, in law, esteemed malicious;-and it lies upon the person *409 destroying life to show the circumstances relied on, to negative the malicious purpose. You should look to the whole evidence, and find the presence or absence of malice, as the truth shall appear.
It' the act was done maliciously, was it perpetrated deliberately with premeditation f If the prisoner coolly formed the design to kill for any time before he executed it, the act was deliberate and premeditated. But if, at the time, he was led to form the design to kill by great provocation, heated blood, and excited passion, which continued from then until the act was done, it would not be held deliberate and premeditated. Yet, if the design was formed under provocation, and in hot blood, and time afterwards elapsed for passion to subside, and reason to resume her empire, the provocation and hot blood would be no excuse or palliation. We are asked to charge you, that if the design to kill was abandoned before the act was done, then the killing was not with malice prepense.
I do not know that I can make this more plain. A determination formed to do harm, which is abandoned, cannot, of course, attach itself to any act not done under its influence; but if such design were formed and given up, and again formed and carried into execution, the original design is a circumstance only, and per- [401 haps but a slight one, for the consideration of the jury, that the mind had deliberated upon the subject. If, then, the prisoner inflicted the wounds upon the deceased with an intention to kill, formed before the act was done, without great provocation, or the influence of heated blood, the law holds them inflicted of deliberate and premeditated malice, and if death ensue from them, the perpetrator is guilty of murder in the first degree.
The law of homicide is defined by the statute law of Ohio, and the guilt or innocence of the prisoner is to be determined by that definition, not that which obtains in England or in any other country. I have explained the requisites for a conviction of murder in the first degree.
[Here the judge read the statute defining murder in the first and •second degree, and manslaughter.]
The difference between murder in the first and second degree, as •expressed in our law, is found in this: to constitute murder in the first degree, the.killing must be of deliberate and premeditated malice, while murder in the second degree is the killing purposely and maliciously but without deliberate and premeditated malice.
Manslaughter is defined to be the unlawful hilling, without malice, ■either upon a sudden quarrel, or unintentionally, while the slayer is in the commission of some unlawful act.
*410 All these offences are embraced in the indictment against the-prisoner, and if the evidence shall establish his guilt of either one of them, it is your duty to find him guilty, and to express in your verdict which of the offences he is guilty of.
You will look to your evidence, and from that alone carefully elicit the truth. You will hold the prisoner innocent of every particular of the charge against him, until his guilt be made manifest in the testimony, and, if the acts proven be without assignable-motives, in proportion as they depart from probability, in the same proportion the presumption of his innocence increases; because, men-are not readily presumed to do unusual, extraordinary, or cruel acts>. without motive.
It is better, much better, that the guilty should go unpunished,, than that the innocent should be punished. You will, therefore, require proof to satisfy your minds beyond a reasonable doubt of guilt, before you convict. And if, upon the whole facts and circumstances you entertain a reasonable doubt of any matter necessary to constitute the crime charged against the prisoner, it is your 402] *duty, as I doubt not it will be your wish, to give him the-benefit of those doubts, and pronounce him not guilty.
If you find the prisoner guilty, you will say in your verdict whether he is guilty of murder in the first or second degree, or of manslaughter. If you find him not guilty, you will say so, and no more.
The jury retired at half-past six o’clock, P. M. At fifteen minutes before nine, they returned with a verdict — Guilty of murder-in the first degree.
A motion was then made for a new trial, because the verdict is against evidence, which was overruled.
A motion in arrest of judgment was then made, argued, considered and overruled. The reporter has ■ preserved no minutes of’ either motion.
The prisoner being set at the bar', and asked the usual question,, if he had anything further to say, why the sentence of the law-should not be pronounced, replied in the negative.
JUDGE WRIGHT then addressed the prisoner as follows: Ira West Gardiner — You have been accused by the grand jury of your county, on their oath, with having purposely, of deliberate and premeditated-malice, murdered Maria Gardiner, otherwise called Maria Buel, by stabbing her in the body with a knife.
Upon this accusation you have been put upon trial before a jury *411 of your fellow-citizens, almost selected by yourself. This jury have listened with great patience and unyielding attention to everything offered in evidence, as well for as against you, and to whatever has been urged in your behalf by the able counsel who have condijcted your defence. They have, on their oaths, found you guilty, as you stand indicted.
The attention of the court has been called- to the indictment, to ascertain if the charge against you is legally set forth. We have examined the authorities adduced, and considered the arguments urged against the validity of the indictment, and are satisfied the allegation it contains legally describes the offence of which you are found guilty; an offence which our law denominates murder in the first degree, and punishes with death.
With the verdict of the jury we are satisfied. In our opinion, it accords with the evidence given to them, and with truth.
The facts proven present a case of uncommon enormity. The object of your cruelty was a young woman, the daughter of your wife, who had been reared in your family, and looked up to you as *to a father, for support and protection. For some reason, [403 not very satisfactorily shown in the proof, she, for a short time before her death, evinced a strong desire to leave your roof, under circumstances which induced her friends to believe she was in fear of you. You pursued her, avowing a determination to be revenged, if she did not return to your house, and continue to reside there. Finally, just before her death, you caused her mother to go to a neighbor’s, whither she had fled, to persuade her to return, and with a butcher knife, met her on the way, at noon-day, and plunged it twice into her body, barbarously murdering her, and when your object was accomplished, you exulted in the deed, and rejoiced that you had obtained your revenge. The act was wholly unprovoked, and unattended by any palliating circumstances. It was an act of wanton and clearly marked depravity.
I have made this statement of the case, with no view of harrowing up your feelings, upon an occasion like this, but to convince you there is no ground to expect pardon from the executive of the state, or from any other earthly tribunal.
It is necessary that you should suffer an ignominious death, that others, warned by your example, may be afraid to commit crime. Be persuaded, then, to employ the few moments remaining to you on earth, in making your peace with God. Let your hope rest on our Father in heaven, whose arm is mighty to save. Beseech him that he will enable you to make such use of your afflictions and *412 punishment, that your soul may be saved in the live to come. Hasten to render justice to any-from whom you may have withheld it in your dealings. Forgive your enemies, and be in charity with all men.
Repent of your sins; prostrate yourself at the feet of Jesus Christ, and earnestly beseech him of his great goodness to intercede with the Father for you. Call, with a single and contrite heart, upon that Jesus, who, of his infinite love, accepted the conversion of a sinner upon the cross, that he may open the eye of his mercy upon you, and quicken you with his grace and Holy Spirit, that you may be converted and cleansed from the deep stains of your sins; be enabled to bear up with patience and fortitude, in this your time of trial; and, at the hour of death, be prepared to depart from this world in hope and in peace.
You will be allowed the visits of your friends and counsel, to aid and advise you in the settlement of your worldly affairs, and of such of the clergy as you may desire, for your sjiiritual aid and comfort.
404] *It now only remains for me to pronounce the judgment the law has provided for your crime. It is—
That you be taken from hence to the common jail of the county, and that you be safely kept. That on Friday, the 4th day of October, in the year of our Lord 1833, you be taken to the place of execution, and betwen the hours of nine o’clock in the morning and four o’clock in the afternoon of that day, that you be hung by the neck till you are dead. May God have mercy on you !
Note. — After the sentence, a petition was circulated, signed and forwarded to the governor, praying a respite of the execution until the meeting of the legislature, to afford opportunity for commuting the punishment. To the gentlemen forwarding this petition, the governor wrote the following letter, and sent a warrant, respiting the sentence till the first of November.

Copy of Governor Lucas's Letter.

Executive Office, Ohio, )
Couumbus, 26th Sept., 1833. f
Dear Sir,
I, on yesterday, received a letter from E. T. Gardiner, who stated himself to be the brother of Ira West Gardiner, who has been convicted at Ihe late term of the Supreme Court of Ohio, within and for the county of Trumbull, of murder in the first degree, and sentenced to be executed on the fourth day of October next, containing sundry documents requesting a postponement of *413 the execution of the sentence of the court, until the next legislature, &c. These documents I have severally considered.
First, a newspaper, containing the sentence of the court against said Gar-diner, in which it appears the court were of opinion that the act was wholly unprovoked, -and unattended by any palliating circumstances, and that it was an act of wanton and clearly marked depravity; and at the same time, reminded the prisoner that he had no ground to expect a pardon from the executive of the state, or any other earthly tribunal.
Second, a statement made by Francis T. Allen and Asahel Jones, physicians. Doctor Allen states that since the trial of Gardiner, he had made inquiries respecting his habits, and the habits of his family, &c., and gave it as his opinion that he possessed an hereditary predisposition to insanity; that he (Allen) was a regular physician and surgeon, &c. Doctor Jones states that he has been for ten years in practice, as a physician and surgeon, and that he was convinced by information obtained since the trial of Gardiner, that one of thé most frequent causes of insanity, viz ; hereditary predisposition, does exist in the family of Gardiner. Neither of these gentlemen stated it (even) as their opinion, that Gardiner was under the influence of insanity, when he committed the crime.
Third, a statement of Joshua R. Giddings and Benjamin F. Wade, in which they state, that they were the acting counsel for the prisoner; that they considered the defence to rest — 1st, on the insanity of the prisoner; 2d, on the total absence of all motive or object to prompt to commit the murder. In the defence they appear to have failed. The jury being the rightful judges of both the law and the fact, founded their verdict upon the testimony, and inferred the motive from the act.
Fourth, a petition praying for a postponement of the execution of the sentence, until the next legislature shall have an opportunity of commuling the punishment of said Gardiner to that of imprisonment for life, within the penitentiary, &c., which petition is signed by
Benjamin Allen,
F. T. Allen,
Titus Brockway,
Eben Newton,
Alex. McConnel,
Ephraim Brown,
George Swift,
Richard Hays,
'Henry Manning,
Richard Iddings,
Silvanus Seely,
Abram Griswold,
Asahel Jones,
Ed. Rockwell,
R. P. Spalding,
John Crowell.
* These documents are so defective in their character, that I cannot [405 feel myself justifiable in acting definitely on the subject; and I regret that the applicants should have forwarded documents on so important a subject, without a more critical examination of the constitution and laws that bear upon the case. If the executive was to postpone the execution of the sentence of the court until the next legislature shall have an opportunity of commuting the punishment as stated in the petition, it would amount to a perpetual postponement; for, the power of commuting the punishment of convicts, cannot be exercised by the legislature, until there is an alteration in the constitution of the state.
By the fifth section of the second article of the constitution, the governor is given general powers to grant reprieves and pardons, after conviction (except *414 in cases of impeachment); and by the provisions of the “act to provide for the safekeeping of persons that may be reprieved by the governor,” passed January 27, 1818, it is provided, that whenever the governor may deem it expedient and proper to reprieve any person under sentence of death, upon any condition whatsoever, the condition upon which such reprieve is granted shall be specified in the warrant, and the person accepting such conditional reprieve, shall subscribe such acceptance upon the warrant, &c.; 29th Ohio Laws, page 344.
Notwithstanding the defects in the documents presented, I have, in consideration of the respectable names attached to the petition (and with a view that the subject may be properly understood, and the sentiments and wishes of the people of Trumbull made known), thought proper to respite the execution of said Gardiner, until the first day of November next; and herewith enclose a warrant to that effect, which will require his consent, as described in the act aforesaid. If, at the expiration of that time, I can be satisfied that it is the wish of the citizens of Trumbull county generally, that his sentence should be commuted to that of imprisonment in the penitentiary for life, their wishes can then be complied with; if not, the sentence of the court will be then executed.
With sincere respect,
I am your obedient servant,
R. Iddings, Esq. ROBT. LUCAS.

Copy of the Warrant from the Governor.

Tiie State oe Ohio, ss.
To all whom it may concern; Be it known, that, whereas, Ira West Gar-diner, late of the county of Trumbull, in the state aforesaid, was convicted of the crime of murder in the first degree, at the August term of the Supremo Court in said county, in the year of our Lord one thousand eight hundred and thirty-three, and was sentenced by said court, to suffer death, on the fourth day of October. A. D. 1833: And, whereas, the said Ira West Gardiner has had such intercession in his behalf, setting forth sundry good causes, for and on account of which, by virtue of the power vested in me by the constitution of the state of Ohio, and the act to provide for the safe-keeping of persons that may be reprieved by the governor, passed the 27th day of January, A. D. 1818, I do hereby respite and postpone the execution of the said Ira West Gar-diner, until the first day of November. 1833, on which day, between the hours of nine o’clock in the morning and four o’clock in the afternoon, the sentence of the court will be executed, and that he subscribe and acknowledge his consent to this reprieve, in pursuance of the above-recited act.
And it is hereby enjoined on the clerk and sheriff of the county of Trumbull, and all other officers and persons concerned, to conduct and govern themselves in the case aforesaid, in pursuance of the constitution and laws in such case made and provided.
Given under my hand and the great seal of the state of Ohio, at [l. s.] Columbus, this twenty-sixth day of September, in the year of our *415 Lord eighteen, hundred and thirty-three, and in the fifty-seventh year of the Independence of the United States of America.
By the Governor: ROBERT LUCAS.
M. H. Kirby, Secretary of State.
*On the back of which is endorsed:
The State of Ohio, Trumbull County, ss.
Warren, September 30, 1833,
I hereby agree and consent to the conditions of the within reprieve. Witness mv hand seal on the day and year above written.
IRA W. GARDINER.
WM. KNIGHT,
LEWIS REEYES.
The State of Ohio, Trumbull County, ss.
Personally appeared Lewis Reeves and William L. Knight, and made oath that they subscribed their names to the above certificate, and that they subscribed the same in the presence of the said Ira W. Gardiner, and that he submitted his name in their presence, and acknowledged his consent to the within reprieve, Before me, GEORGE PARSONS, Clerk, S. C.
Warren, September, 30, 1833.
Gardiner was executed on the first day of November.
[Deliberation in homicide; Shoemaker v. State, 12 O. 43, 53. Opinions of acquaintances in disproof of insanity; Clark v. State, 12 O. 483, 493.
Definitions in homicide; Fonts v. State, 8 O. S. 98, 112. Indictment for homicide, cited in diss. s. p. ib. 129.
Execution may be temporarily suspended by reprieve, explained and followed; Sterling v. Drake, 29 O. S. 457, 465.]